NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DARYL FALLAS, <br><br> Plaintiff, <br><br> v. <br><br> CAVALRY SPV I, LLC and SCHACHTER PORTNOY, LLC, <br><br> Defendants. | Civil Action No. 3:12-cv-05664 (PGS) <br><br> **MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

      Pro se plaintiff Daryl Fallas ("Plaintiff") filed a Complaint in the Superior Court of New Jersey, Law Division, Mercer County, asserting violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") as well as a common law claim for intentional infliction of emotional distress. Defendant Cavalry SPV I, LLC ("SPV") removed to this Court, and SPV and defendant Schachter Portnoy, LLC ("Schachter") (collectively, "Defendants") each filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has also filed a motion to remand.[1] For the reasons set forth below, Plaintiff's motion to remand is denied, and Defendants' motions to dismiss are granted. In addition, Plaintiff has thirty days from the date set forth in this Order to file an amended complaint that cures the deficiencies identified in this opinion.

---

[1] Plaintiff filed what he titled "Objection to Removal from New Jersey Court." *See* ECF No. 5. The Court will treat the filing as a motion to remand.

**I.    BACKGROUND**

Plaintiff alleges he received a letter from Schachter dated November 14, 2011, which stated, among other things, that Schachter was retained to collect a debt on behalf of SPV. (*See* Complaint, Ex. A.) Three days later, Plaintiff sent a letter to Schachter disputing the validity of the debt and requesting that Schachter either provide proof of the alleged debt or cease and desist all communications.

Plaintiff alleges that he never received proof of the debt from Schachter or any other party, and that several months later, in April and June 2012, he received two new debt collection letters from an entity calling itself Cavalry Portfolio Services. (*See* Complaint, Exs. C,D.) These letters attempted to collect the same debt that Schachter had previously attempted to collect and that Plaintiff had disputed.[2] Later, SPV allegedly reported plaintiff's account as delinquent to the credit reporting agencies known as Experian and Equifax.

On the foregoing facts, Plaintiff is seeking statutory and punitive damages for violations of the FDCPA, 15 U.S.C. §1692 *et seq.*, violations of the FCRA, 15 U.S.C. § 1681 *et seq.*, and for intentional infliction of emotional distress. On September 12, 2012 SPV removed this action with Schachter's consent pursuant to 28 U.S.C. §1441(a).

**II.    MOTION TO REMAND**

As noted above, Plaintiff originally filed the Complaint in the Superior Court of New Jersey. SPV removed to this Court. Plaintiff now challenges the removal and asks the Court to remand the case to state court. For the reasons that follow, the motion to remand is denied.

A suit filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a). The Court has

---

[2] Both letters listed the debt's value at $5,648.97, and both identified the original lender as MBNA/FIA Card Services, N.A.

"federal question" jurisdiction under 28 U.S.C. § 1331, based upon the FDCPA and FCRA claims.  Indeed, the FDCPA explicitly authorizes jurisdiction in United States district courts.  *See* 15 U.S.C. § 1692k(d).  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law action for intentional infliction of emotional distress.

Plaintiff's challenge to SPV's removal, however, is based on timing. A notice of removal must be filed by a defendant within thirty-days from when the defendant is properly served with the summons and complaint.  *See* 28 U.S.C. § 1446(b)(2)(B).  The parties do not dispute that Schachter was properly served on July 25, 2012, which initiated the running of the thirty-day period within which Schachter could file a notice of removal.  The question here is whether the attempted service on SPV on that same date was proper such that SPV's thirty-day period to file the notice of removal also began to run at that time.[3]  If SPV's clock began to run with the attempted service on July 25, 2012, SPV's notice of removal was untimely and the case should be remanded.

As evidence that SPV was properly served, Plaintiff offers several "Sheriff's Return of Service" forms from the Mercer County Office of the Sheriff.  Each of the forms name Cavalry SPV I LLC as the "Defendant".  None, however, purport to have effectuated service on Cavalry SPV I LLC.  One indicates that "Schachter Portnoy" was served on July 25, 2012, by way of service on Darrin Portnoy, presumably a managing agent or person authorized to accept service at the firm Schacter Portnoy, LLC.  (Plaintiff's Response to Defendant Cavalry SPV I, LLC's Opposition to Plaintiff's Motion to Remand, D.I. 14, Ex. C.).  Another form indicates that an entity named "Cavalry Portfolio Services" was served on July 25, 2012, also by way of service on Darrin Portnoy.

---

[3]  Plaintiff also claims that it properly served SPV on August 23, 2012.  Whether this service was proper is immaterial to this motion, because SPV's notice of removal was filed within 30 days of August 23, 2012, so the notice of removal would have been timely filed even if service was effectuated on August 23.

The question of whether service has been properly effectuated is one of state law. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353 (1999). In New Jersey, proper service on a corporate defendant is by:

> . . . serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

New Jersey Court Rule 4:4-4(a)(6). According to this Rule then, personal service upon SPV, a corporate defendant, must be made either upon its registered agent or a person authorized to accept service. In addition, Rule 4:4-6 provides that "an acceptance of the service of a summons, signed by the defendant's attorney . . . shall have the same effect as if the defendant had been properly served." The question, then, is whether, at the time Plaintiff attempted to serve SPV, Mr. Portnoy (or the Schachter firm) was either SPV's registered agent or a person authorized to accept service as contemplated by Rule 4:4-4(a)(6), or alternatively whether Mr. Portnoy signed an "acceptance of the service" and was "defendant's attorney" as contemplated by Rule 4:4-6. If Mr. Portnory (or the Schachter firm) was not a registered agent or a person authorized to accept service, and Mr. Portnoy did not sign an "acceptance of service" as defendant's attorney, then service was not effected on SPV on July 25, 2012.

4

New Jersey courts have adopted the position of the federal courts that the plaintiff has the burden of showing that an alleged agent has specific authority, express or implied, for the receipt of process:

> The federal courts have consistently held that, in the absence of an express agreement between the agent and principal or in the absence of circumstances which clearly show that such an agreement was intended by the parties, authorization to accept service of process on behalf of a corporation or an individual would not be deemed to exist. *Miree v. United States*, 490 F.Supp. 768 (N.D. Ga.1980); *United States v. Marple Community Record, Inc.*, 335 F.Supp. 95 (E.D. Pa.1971); *WICA, Inc. v. WWSW, Inc.*, 191 F.2d 502 (D.C. Cir. 1951); *Burger Chef Systems, Inc. v. Baldwin Inc.*, 365 F.Supp. 1229 (S.D.N.Y. 1973).

*Local 617, Etc. v. Hudson Bergen Trucking Co.*, 182 N.J. Super. 16, 20 (App. Div. 1981); s*ee also* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1097 pp. 536-39 (2002).

Here, there has been no evidence offered to show that there was an agreement between the parties that Schachter was SPV's registered agent or a person authorized to accept service on behalf of SPV. All that has been shown is that Shachter was retained, at one point, to collect a debt on behalf of SPV. Indeed, SPV is a foreign business entity registered in the State of New Jersey with a designated service agent. SPV has designated the Corporation Trust Company in West Trenton, New Jersey, as its agent for service of process. (*See* Status Report for Cavalry SPV I, LLC from State of New Jersey's Division of Commercial Recording, New Jersey Business Gateway Business Entity Information and Records Service, dated September 28, 2012, ECF No. 10, Ex. A.) SPV's main office is in Valhalla, NY. (*See Id.*) Neither Schachter, nor Mr. Portnoy, nor Cavalry Portfolio Services is listed as a person or agent authorized to accept service for SPV, and Plaintiff has not otherwise shown that an agency agreement existed. Accordingly, the returns of service do

not evidence service of the summons and complaint on SPV as required by New Jersey Court Rule 4:4-4(a)(6). With respect to Rule 4:4-6, in addition to failing to fulfill its burden of showing that Mr. Portnoy or Schachter had an express or implied agency agreement to accept process on SPV's behalf, Plaintiff also has not shown that Portnoy signed an acceptance of service; although the Return of Service forms indicate that the summons and complaint may have been left with Mr. Portnoy, the forms do not in any way indicate that Mr. Portnoy "accepted" service, and the forms do not contain any signature by Mr. Portnoy, let alone a signature indicating acceptance of service.

Therefore, SPV's thirty-day period for removal did not begin to run on July 25, 2012, as Plaintiff contends, and thus the removal was timely. Plaintiff's motion to remand is denied.

### III.  MOTIONS TO DISMISS

**Legal Standard on a Motion Dismiss**

When reviewing a Motion to Dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted). The touchstone of the analysis "is whether the parties' well-plead allegations can sustain the causes of action alleged." *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 384 n.6 (D.N.J. 2010). In order to survive, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, No. 11-

CV-3096, ___ F.3d ___ (3d Cir. 2013) ("The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citations and internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the court "will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 263 (3d Cir. 2008); see also *Iqbal*, 556 U.S. at 678.[4]

**FDCPA Claims**

As stated, *supra*, Plaintiff received a debt collection letter from Schachter regarding a debt allegedly owed by Plaintiff to SPV. Plaintiff subsequently sent a reply letter to Schachter disputing the validity of the debt and requesting that Schachter verify the debt or cease and desist collection activities. According to the facts before the Court, Schachter did indeed cease collection activities; however, two communications attempting to collect the same debt were subsequently sent to Plaintiff that appear to be from an entity named Cavalry Portfolio Services. Based on these facts, Plaintiff alleges that Defendants' actions constituted multiple violations of the FDCPA.

In support of his FDCPA claims, Plaintiff has plead only the barest facts. Several threshold requirements for FDCPA claims have not been met. First, "[a] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a

---

[4] This Court's review of a motion to dismiss for failure to state a claim is limited to the contents of the complaint, including any attached exhibits. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992). On a motion to dismiss, the Court may consider in addition to the facts alleged in the complaint, any documents attached thereto as exhibits. *See City of Pittsburgh v West Penn Power Corp.*, 147 F.3d 256 (3d Cir. 1998). The Court may also consider matters of public record and an undisputedly authentic document that a defendant attaches as an exhibit to a motion, if the plaintiff's claims are based on that document. *See Pension Benefit Guaranty Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1198 (3d Cir. 1998).

'debt.'" *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir, 1987).  The FDCPA defines a "debt" as:

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).  Thus not all obligations to pay a creditor are considered "debts" under the FDCPA.  Here, Plaintiff has failed to allege that the debt was incurred primarily for personal family, or household purposes.  To survive a motion to dismiss, Plaintiff must allege facts which indicate that the nature of the alleged debt is of the type the collection of which is regulated by the FDCPA.

In addition, Plaintiff has not alleged that either of the Defendants, but most importantly, SPV, is a "debt collector" under the FDCPA.  "The FDCPA's provisions generally apply only to 'debt collectors'.  Creditors – as opposed to 'debt collectors' – generally are not subject to the FDCPA."  *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) (internal citation omitted); *see also* § 1692a(6).  The FDCPA defines a "debt collector", in relevant part, as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .  The term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).  Here, Plaintiff has not alleged facts showing that either of the Defendants are "debt collectors" as defined by this section.  Most importantly, because Schachter does not

8

seem to dispute that it is a debt collector, Plaintiff has not alleged any facts showing that SPV is a debt collector. Plaintiff says nothing showing that SPV's principal business is debt collection or that it was attempting to collect a debt owed to another. The facts properly before the Court indicate that at least in this instance the debt in question was owned by SPV. Likewise, SPV also has not alleged that SPV is a "creditor" under the FDCPA's definition, nor has Plaintiff alleged that SPV used any name other than its own in the process of collecting its own debts, as would be required to qualify as a debt collector. It should be noted that Plaintiff complaints of certain conduct that on its face seems attributable to an entity named Cavalry Portfolio Services. Cavalry Portfolio Services was not named as a defendant in this action, and the Complaint does not make any allegations as to Cavalry Portfolio Services' relationship to SPV, if any. While Plaintiff's submissions as a whole do tend to suggest that perhaps SPV used the name Cavalry Portfolio Services to collect its own debt, this allegation does not appear explicitly anywhere in the Complaint such that Defendants were put on notice of this theory. Even accepting the factual assertions in the Complaint as true, there is no allegations that Cavalry Portfolio Services and SPV are the same entity, nor is there any allegation as to how they may be related. Therefore, the Complaint fails to allege facts sufficient to show that any of Defendants, or Cavalry Portfolio Services for that matter, are debt collectors under the FDCPA.

For these two basic reasons – Plaintiff's failure to allege facts showing that the debt in question qualifies as "debt" under the FDCPA, and Plaintiff's failure to allege facts showing that Defendants are "debt collectors" under the FDCPA – the FDCPA claims must be dismissed. The Court, however, will address additional deficiencies in the FDCPA claims that Plaintiff must cure in any amended complaint that may be filed. Plaintiff does not enumerate the specific provisions of the FDCPA that Defendants allegedly violated, but lists as examples: "not

9

providing [Plaintiff] with proof of the alleged debt as required by law; failing to cease and desist further communication (twice); harassment, etc." Although not specifically articulated in the Complaint or in Plaintiff's brief in opposition to Defendants' motions to dismiss, it appears that Plaintiff alleges violations of at least the following provision of the FDCPA: (1) 15 U.S.C. § 1692g(b), which obligates debt collectors to verify a debt or cease collection activities once a consumer disputes a debt; (2) 15 U.S.C. § 1692c(c), which similarly obligates debt collectors to cease most communication with a borrower upon the borrower's request; and (2) 15 U.S.C. § 1692d, which prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

   Section 1692g(a) of the FDCPA requires a debt collector to send a written notice to consumers within five days of initial communication with them containing certain information about the debt being collected and about the consumers' rights to dispute the validity of the debt, unless the information is contained in the initial communication with the consumers. Plaintiff does not claim that Schachter's initial contact letter did not meet the requirements listed under 1692g(a), and it appears that the letters do indeed pass muster. Rather, Plaintiff seems to be claiming that subsequent to Plaintiff's notification to Schachter that he disputed the debt, Defendants failed to validate the debt. Section 1692g(b) of the FDCPA defines a debt collector's obligations upon consumer notification of a consumer's dispute as follows:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). The debt collector does not need to obtain and provide the consumer with verification of the debt, but it does need to cease collection of the debt if no verification is provided to the consumer. Plaintiff's letter to Schachter seeking validation of the debt states, "[s]hould your client be unable to provide the above, I anticipate that you will cease and desist any future collection activities . . . ." (Complaint, Exhibit "B"). This letter clearly acted as notice to the recipient debt collector, Schachter, that Plaintiff disputed the debt. Therefore, Schachter was obligated to cease collection of the debt until it sent a copy of the verification of the debt to Plaintiff, or to cease collection forever if no verification was ever sent. As Plaintiff has not alleged that Schachter sent any further communications or conducted any further debt collection activities with respect to the debt referenced in the collection letter it sent to Fallas, the § 1692g(b) claim must be dismissed as to Schachter.

With respect to the § 1692g(b) claim against SPV, Plaintiff's theory, although not fully articulated in the Complaint, is that SPV was obligated to cease collection of the debt after Plaintiff sent the disputation letter to Schachter and that the subsequent letters from Cavalry Portfolio Services to Plaintiff were a violation of the obligation to cease collection. The Complaint does not adequately set forth sufficient facts to support this theory for several reasons. First of all, although Plaintiff has alleged that he sent Schachter a letter disputing the debt, he has not alleged that he sent any other entity a disputation letter. The statute says, "If the consumer notifies *the debt collector* in writing . . . that the debt, or any portion thereof, is disputed, . . . *the debt collector shall* cease collection of the debt." 15 U.S.C. § 1692g(b) (emphasis added). Thus, it would seem from the plain language of the statute that the obligation to cease collection of the debt is imposed only upon *the debt collector* who is given notice of the dispute by the consumer, and this Court is aware of no authority that has provided an alternate interpretation. Under this

11

interpretation, neither SPV nor Cavalry Portfolio Services were obligated to cease collection of the debt based solely on Plaintiff's letter to Schachter.  More fundamentally, Plaintiff has not alleged any facts to show that the collection letters that appear to be from an entity called Cavalry Portfolio Services should be attributed to Defendant SPV.  Additionally, even if the letters are attributed to SPV and even if the Court were to hold that Plaintiff's disputation letter to Schachter somehow triggered an obligation for SPV to cease collection activities under § 1692g(b), Plaintiff would still need to allege facts sufficient to support a finding that SPV is a debt collector.  As Plaintiff failed to allege facts sufficient to support its § 1692g(b) claim against SPV, the claim is dismissed with leave to replead in a manner that cures the deficiencies identified in this opinion.

        Plaintiff also fails to adequately plead a section 1692c(c) claim.   Section 1692c(c) of the FDCPA states, in pertinent part:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . .

15 U.S.C. § 1692c(c).  The § 1692c(c) claim suffers from the same deficiencies as the § 1692g(b) claim.  Here, given that Schachter never provided Plaintiff with verification of the debt, Plaintiff's letter to Schachter demanding that Schachter verify the debt or cease collection activities can fairly be interpreted as notification to Schachter that Plaintiff wished it to cease further communication with respect to the debt.  However, as in the § 1692g(b) claim, Plaintiff has not alleged facts showing that either of the Defendants *both* received the notification *and* failed to cease communications.  Plaintiff has shown that he notified Schachter of his wish to cease further communications, but has failed to show that Schachter communicated with him any

further with respect to the debt.  And while Plaintiff has shown that he received further communication from Cavalry Portfolio Services, even if the letter from Cavalry Portfolio Services can be attributed to SPV Plaintiff still has not shown that it notified SPV of its desire to cease communication with respect to the debt.  Accordingly, Plaintiff has failed to adequately plead a § 1692c(c) claim.

Finally, Plaintiff's section 1692d claim is also insufficient to survive a motion to dismiss.  Section § 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Section 1692d provides six non-exhaustive examples of conduct that constitutes harassment or abuse by a debt collector, none of which are applicable here.  Although the question of whether conduct harasses, oppresses or abuses is a question of fact for a jury to decide, "the conduct plaintiff alleges must still meet a threshold level in which the facts support a reasonable inference that he has made a plausible claim to relief under 1692d."  *DeGeorge v. Fin. Recovery Servs.*, 2012 U.S. Dist. LEXIS 140966, 10-11 (E.D. Pa. Sept. 27, 2012).  A debt collection letter does not constitute harassment when it does not "threaten [p]laintiff, contain any offensive language, or attempt to coerce the payment of the debt in any way."  *Id.*  Here, plaintiff's allegation of harassment is barely pleaded and is merely a "conclusory or 'bare-bones' allegation[]" which the Court of Appeals has made clear "will no longer survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The letters attached to Plaintiff's Complaint contain no offensive language or attempt to coerce the payment of the debt, and the quantity or frequency of letters – three in a period of many months – also do not suggest harassment.  Plaintiff has therefore also failed to state a claim under § 1692d the FDCPA.

**FCRA & False Reporting to Credit Agency Claims**

Defendants also move to dismiss Plaintiff's claim under the FCRA that Defendants falsely reported negative activity on his credit report. Defendants contend that the allegations do not state a claim for which relief can be granted, because (1) no private right of action exists for alleged violations of Section 1681s–2(a) of the FCRA; and (2) to the extent that Plaintiff's Complaint states common law claims, these are preempted by the FCRA.

In general terms, the FCRA imposes duties on two types of entities: credit rating agencies and "furnishers of information." "Although undefined by the statute, the latter category is understood to include any entity that reports information relevant to a consumer's credit rating — i.e., payment history, amount of debt, and credit limit — to credit reporting agencies." *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 446 (D.N.J. 2010) (citing H.R. Rep. No. 108-396, at 24 (2003) (Conf. Rep.)). The parties do not seem to dispute that, if anything, Defendants are "furnishers of information" for the purposes of the statute.

The FCRA imposes certain duties upon furnishers of credit information. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009). First, in 15 U.S.C. § 1681s-2(a) the FCRA provides that a furnisher of data to consumer reporting agencies must provide accurate information. However, Congress limited the enforcement of this section exclusively to government entities identified in other portions of the act and did not create a private cause of action to enforce that section. *See* 15 U.S.C. § 1681s-2(d); *Burrell v. DFS Servs., LLC*, 753 F.Supp.2d 438, 445 (D.N.J. 2010). The only provision of the FCRA that an individual consumer can enforce against his or her creditors is found in § 1681s-2(b). That provision, however, requires consumers to meet procedural requirements — namely, filing a complaint with a credit rating agency (which is then required to pass the complaint on to the creditor) — before bringing

an action.  15 U.S.C. § 1681s-2(b)(1); *see Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 445 (D.N.J. 2010) (citing *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002)).  To state a claim under section 1681-s2(b), a plaintiff must plead that "(1) she sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Martinez v. Granite State Mgmt. & Res.*, 2008 U.S. Dist. LEXIS 94995 (D.N.J. Nov. 20, 2008) (quoting *Ruff v. America's Servicing Co.*, 2008 U.S. Dist. LEXIS 33447, *4 (W.D. Pa. Apr. 23, 2008)).  Here, Plaintiff has not alleged that he contacted any of the credit reporting agencies that allegedly reported the information furnished by Defendants; if Plaintiff never contacted any of the credit reporting agencies, Defendants' duty to investigate the accuracy of Plaintiff's account information was not triggered.  Accordingly, Plaintiff fails to state a claim for relief under 15 U.S.C. § 1681s–2(b).

To the extent that Plaintiff's claims for the false reporting of negative activity on Plaintiff's credit report are based on state law causes of action, those causes of action are dismissed because they are preempted by the FCRA.  The FCRA specifically states that § 1681s-2 preempts any state law claims relating to furnishers of information to credit reporting agencies. 15 U.S.C. § 1681t(b)(1)(F).  Section § 1681t(b)(1)(F) provides, in pertinent part: "No requirement or prohibition may be imposed under the laws of any State - with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Id.*  This statute was created "to eliminate state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Campbell v. Chase Manhattan Bank*, USA, N.A., 2005 U.S. Dist. LEXIS 16402 (D.N.J. June 24, 2005).  Therefore, any state law claims

predicated upon the false reporting of negative credit activity are dismissed as preempted by the FCRA.

### Intentional Infliction of Emotional Distress

Plaintiff also seeks damages for the intentional infliction of emotional distress. "To establish an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must show (1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001). Extreme and outrageous conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* Here, Plaintiff has not pleaded these minimum necessary elements. Among other things, the Complaint fails to allege that Defendants intended to cause or should have known their conduct would cause emotional distress. The Complaint also fails to allege that Defendants' conduct was extreme or outrageous; in fact, the facts pleaded in the Complaint point to the opposite conclusions – that Defendants did not intend to cause emotional distress and that Defendants' conduct – the sending of three collection letters over many months – was not extreme or outrageous. Plaintiff has therefore failed to state a claim for the intentional infliction of emotional distress.

### Conclusion

Accordingly, for all of the reasons stated above, Plaintiff's motion to remand is denied, and Defendants' motions to dismiss are granted in their entirety. The Complaint is dismissed without prejudice. Plaintiff has thirty days within which to amend the Complaint to cure the deficiencies identified in this opinion.

## ORDER

**It is** on this 29th day of April 2013:

**ORDERED** that Plaintiff's motion to remand [ECF No. 5] is denied; and it is further

**ORDERED** Defendants' motions to dismiss [ECF Nos. 7,8] are granted, and the Complaint is dismissed without prejudice; Plaintiff has thirty days within which to file an amended complaint to cure the deficiencies identified in the Memorandum.

<em>s/Peter G. Sheridan</em><br>
PETER G. SHERIDAN, U.S.D.J.